**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| CORNELIS GROENEWEG, | : | Case No. 1:24-cv-66 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| NEWMAN SANITARY GASKET | : | |
| COMPANY, | : | |
| | : | |
| Defendant. | : | |

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS**

This civil action is before the Court on Defendant's motion to dismiss pursuant to

Fed. R. Civ. P. 12(b)(6) (Doc. 6) and the parties' responsive memoranda (Docs. 7, 8).

Plaintiff Cornelis Groeneweg ("Plaintiff") brings this civil action against

Defendant Newman Sanitary Gasket Company ("Defendant"), alleging the following

claims: breach of contract; failure to make prompt payment of wages, in violation of

Ohio Rev. Code § 4113.15; unjust enrichment; and failure to pay commission, in

violation of Ohio Rev. Code § 1335.11(C).  (Doc. 1).

## I.  BACKGROUND

Defendant is a manufacturer and distributor of high purity gaskets, diaphragms,

O-rings, and other custom products.  (Doc. 1 at ¶ 8).  On September 10, 2018, Defendant

and Plaintiff executed an Employment Agreement ("Employment Agreement"), a copy of

which is attached to Plaintiff's Complaint as Exhibit A.  (*See* Doc. 1-1).  The three-page

Employment Agreement, which is fully signed, initialed, and dated, states that:

"[Defendant] hereby agrees to employ [Plaintiff], and [Plaintiff], in consideration of such employment, hereby accepts employment as **Salesman**."  (*Id*.) (emphasis added).  With regard to compensation, the Employment Agreement states as follows:

> Base Salary. The Employee [(*i.e.*, Plaintiff)] shall receive an annual base salary at the rate of $65,000 and the base salary may be re-evaluated on each July 1.  Such base salary shall be payable weekly in substantially equal payments and is subject to such income and employment tax withholding as required by law at the time of payment.

(Doc. 1-1 at ¶ 3).  The Employment Agreement does not include any other terms or agreements related to compensation—*e.g.*, salary, commission, bonuses, benefits, *etc.*—nor does it reference or incorporate any other agreements or prior offers.

Plaintiff's Complaint also includes as Exhibit B an unsigned letter (the "Offer Letter") dated August 31, 2018 (*i.e.*, 10 days prior to the execution of the Employment Agreement), which letter states that "[Defendant] Newman Sanitary Gasket Company would like to offer the following salary & benefits of employment to [Plaintiff] Cor Groeneweg as **International Sales Manager**[.]"  (Doc. 1-2) (emphasis added).  The Offer Letter then proceeds to detail the specific salary and benefits terms offered, including commission, profit sharing bonuses, insurance, *etc.*  (*Id*.)

The Offer Letter also references an attachment regarding the payment of commission, which attachment appears to be included as the second page of Exhibit B, and is entitled "Newman Sanitary Gasket Commission Program (8/31/2018)" (the "Commission Policy").  (*Id*. at 2).  The Commission Policy states as follows: "The Employee shall be paid a commission of $6,250, subject to such income and employment

tax withholding as required by law at the time of payment, when the combined Sales Gross Profit of the Sales person's territory increases $68,750 over the base value from Sales Gross Profit." (*Id.*)  The Commission Policy further explains that "[t]he starting base value from Sales Gross Profit will be calculated using a rolling twelve (12) month period ending October 31, 2018." (*Id.*)

Additionally, the Commission Policy states that, once earned, "the commission will be paid on the same schedule as profit sharing bonuses," *i.e*, on a quarterly basis, and that "[t]he Employee will not be eligible for a profit-sharing bonus in any quarter that the Employee qualifies to receive commission earnings." (*Id.*); (*See id.* at 1 ("Profit sharing bonus paid quarterly on or around the first day of each new season")).  Finally, after a commission is paid, "the base value from Sales Gross Profit will be increased by $68,750 for the purpose of earning another commission" and the "rolling twelve (12) month tabulation of Sales Gross Profit as compared to the base value Sales Gross Profit will be repeated each time the base value is increased." (*Id*. at 2).

Plaintiff maintains that the Offer Letter and attached Commission Policy were part of his Employment Agreement and, accordingly, he was entitled to receive commission payments as detailed in the Commission Policy.  (*See* Doc. 1 at ¶¶ 11-14). Plaintiff states that, based on his own records, as well as records provided by Defendant, Plaintiff made over $8 million in sales for Defendant between November 1, 2018 to October 31, 2023. (*Id*. at ¶ 15). However, Plaintiff asserts that, despite him making numerous demands, Defendant has failed to pay his commission pursuant to the terms of the Commission

Policy, and that Defendant instead claimed it was "only obligated [] to make one $6,250.00 commission payment to [Plaintiff] per month." (*Id*. at ¶¶ 16-20).

Defendant moves for dismissal of the Complaint for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 6). Defendant disputes that the unsigned Offer Letter and attachment are incorporated into the Employment Agreement but contends that Plaintiff's Complaint fails regardless. (Doc. 6 at 3, n.2).[1] Alternatively, should the Court not dismiss the Complaint in full, Defendant moves to limit any remaining claims under the applicable statute of limitations. (*Id*.)

## II.  STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." For purposes of a Rule 12(b)(6) motion, the Court must view the complaint in the light most favorable to the plaintiff and take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009).

To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." And while Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' … it

---

[1] Although Defendant does not concede that the Offer Letter and Commission Policy are incorporated into the Employment Agreement, and despite the Employment Agreement itself making no mention of commission, Defendant's motion appears to acknowledge that Plaintiff was paid commission payments during his employment. (Doc. 6 at 3-4) ("[Plaintiff] has already been paid his commission per the policy, but now he wants more").

demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S.
544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation
of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (citing
*Twombly*, 550 U.S. at 555). In fact, <u>in determining a motion to dismiss, "courts 'are not
bound to accept as true a legal conclusion couched as a factual allegation[.]'"</u> *Twombly*,
550 U.S. at 555 (emphasis added) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
Further, "[f]actual allegations must be enough to raise a right to relief above the
speculative level[.]" *Id.*

Additionally, while a Court's Rule 12(b)(6) review is generally restricted to the
four corners of the complaint, the Court's Rule 12(b)(6) review may include "documents
that the complaint refers to and depends on"). *VCST Int'l B.V. v. BorgWarner
Noblesville, LLC*, 142 F.4th 393, 399 (6th Cir. 2025) (citing *Blackwell v. Nocerini*, 123
F.4th 479, 486–87 (6th Cir. 2024)).

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual
matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*,
556 U.S. at 678. A claim is plausible where a "plaintiff pleads factual content that allows
the court to draw the reasonable inference that the defendant is liable for the misconduct
alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more
than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-
pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed.  *Id.*  (citing Fed. Rule Civ. P. 8(a)(2)).

### III.  ANALYSIS

Defendant moves for dismissal under Rule 12(b)(6), arguing that: (1) the plain language of the Employment Agreement does not support a breach of contract claim; (2) Ohio Rev. Code § 1335.11 does not apply to Plaintiff; (3) the Prompt Pay Act claim fails because Plaintiff is not owed any further compensation under the terms of the Employment Agreement; and (4) the unjust enrichment claim is precluded because Plaintiff seeks equitable relief for a claim that arises under the terms of an express contract, *i.e.*, the Employment Agreement.  (Doc. 6 at 5-12).  Alternatively, Defendant argues that, even if the Court does not dismiss Plaintiff's claims outright, the claims should be limited, subject to the two-year statute of limitations under the Prompt Pay Act. (*Id*. at 13-14).

As set forth below, the Court concludes that Plaintiff's Complaint suffers from a number of deficiencies.

From the Court's perspective, the more pressing issue arises from the appearance that neither the Employment Agreement, the Offer Letter, nor the Commission Policy appear to accurately reflect that parties' actual agreement.

### A  Breach of Contract

"To establish a breach of contract under Ohio law, a plaintiff must show: (1) a contract existed; (2) the plaintiff performed under the contract; (3) the defendant breached the contract; and (4) the plaintiff suffered damages from the breach." *Dean v.*

*Chamberlain Univ., LLC*, No. 21-3821, 2022 WL 2168812, at *2 (6th Cir. June 16, 2022) (citing *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006)).

Here, on its face, the issue appears to be a straightforward dispute over contract interpretation.  That is, Defendant argues that, even assuming the Commission Policy is valid, its plain, unambiguous language belies Plaintiff's assertion that any further commission is owed to him.  (Doc. 6 at 6-10).  On the other hand, Plaintiff alleges that Defendant is relying on a misinterpretation of the Commission Policy in order to withhold some of Plaintiff's commission payments.  (Doc. 7 at 4-8).

To start, the duly signed Employment Agreement makes no mention of commission.  Indeed, Plaintiff's alleged entitlement to commission arises solely from the Offer Letter (which, in turn, references an unnamed attachment that Plaintiff alleges is the Commission Policy).  But, as this Court previously noted, the Offer Letter is an unsigned, unincorporated document that predates the Employment Agreement and, most notably, is **in reference to an entirely different employment position**—specifically, "International Sales Manager," as opposed to "Salesman."  (Docs. 1-1, 1-2).  In other words, based on the documentation provided, it would appear that, despite Defendant initially *offering* Plaintiff the position of "International Sales Manager" (which position entitled him to benefits and commission), Plaintiff was ultimately *hired* as a "Salesman," for which there was no agreement to pay Plaintiff a commission at all.

But, as alleged in the Complaint (and confirmed in Defendant's motion), Plaintiff *was* receiving commission payments during his employment.  (*See* Doc. 1 at ¶¶ 17-20; Doc. 6 at 3-4).  Assuming this to be true (as the Court must at this stage), then the parties

7

were operating outside the bounds of the Employment Agreement—for instance, by way of an oral agreement or practice to incorporate the Commission Policy, or by virtue of a separate written or unwritten agreement that is not before the Court.

Although Plaintiff's allegations include the assertion that the Commission Policy was incorporated into the Employment Agreement by reference, that specific allegation is a legal conclusion and the Court need not accept it is true without further factual evidence in support. "Courts 'are not bound to accept as true a legal conclusion couched as a factual allegation [in determining a motion to dismiss].'" *Twombly*, 550 U.S. at 555 (emphasis added) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  What saves the complaint from dismissal at this stage are the factual allegations that Defendant did pay commissions during the parties' relationship despite the Employment Agreement's silence on the practice.  The practice of commissions having been paid makes <u>plausible</u> Plaintiff's assertion that the Commission Policy applied to (and was incorporated into) the parties' relationship.

Ultimately, a full understanding of the parties' employment relationship, and the agreement(s) on which it was based, will be a critical question for discovery. Accordingly, it would be premature for this Court to conclude that Plaintiff's breach of contract claim fails at this stage.  The motion to dismiss the breach of contract claim fails.

**B.  Ohio Rev. Code § 1335.11**

Ohio Revised Code § 1335.11 requires that a "principal" must timely pay any earned commission owed to a "sales representative" upon the termination or expiration of their contractual relationship.  Notably, under the statute, a "sales representative" is

8

defined as "a person who contracts with a principal to solicit orders for a product or orders for the provision of services and who is compensated, in whole or in part, by commission, **but does not include … a person who is an employee of a principal**[.]" Ohio Rev. Code § 1335.11(A)(3) (emphasis added).

Defendant argues that Ohio Rev. Code § 1335.11 is inapplicable in the instant case because Plaintiff was an employee of Defendant and, accordingly, he does not meet the statutory definition of a "sales representative."  (Doc. 6 at 5-6).  However, Plaintiff argues he has "plausibly alleged that, under Ohio law, he functioned as a contractor, is a sales representative as defined by O.R.C. §1335.15 [*sic*], and is not exempted from the protection of the statute."  (Doc. 7 at 13).  In the alternative, Plaintiff seeks leave to amend the Complaint, should the Court find that the Complaint does not adequately detail Plaintiff's role and duties.  (*Id.*)

"Under Ohio law, '[t]he chief test in determining whether one is an employee or an independent contractor is the right to control the manner or means of performing the work.'"  *Meek v. Tom Sexton & Assoc., Inc.*, 163 Ohio App. 3d 549, 553 (2005) (quoting *Bobik v. Indus. Comm'n*, 146 Ohio St. 187, 191 (1946)).  This determination requires consideration of a number of factors, such as, "who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes travelled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts."  *Bostic v. Connor*, 37 Ohio St. 3d 144, 146 (1988) (citations omitted).

9

In the context of a Rule 12(b)(6) analysis, the Court cannot make a fact-intensive determination regarding employment status.  Rather, the question before the Court, at this time, is whether Plaintiff has sufficiently pleaded facts to support the claim that he may be entitled to relief under Ohio Rev. Code § 1335.11.

In that regard, Plaintiff's Complaint states that he "was a 'sales representative' as defined in R.C. §1335.11(A)(3) who contracted with [Defendant] to solicit orders with entities located within and without the State of Ohio for products and who was paid, in whole or in part, by commission."  (Doc. 1 at 6, ¶ 40).  But Plaintiff's statement omits the statute's employee-exception language.  Moreover, the Complaint does not contain any facts that assert, or even imply, that he was an independent contractor.  And while Plaintiff never expressly refers to himself as an "employee" in the Complaint, the entirety of Plaintiff's claims relies upon the Employment Agreement, Offer Letter, and Commission Policy, all of which identify and describe an employer/employee relationship.[2]

In short, the Complaint claims that Plaintiff is a "sales representative" within the meaning of the statute, but "courts 'are not bound to accept as true a legal conclusion

---

[2] Beyond Plaintiff's qualification as a "sales representative," the Court would note that it is not clear whether the payments contemplated under the Commission Policy (assuming it controls) constitute "commission" under Ohio Rev. Code § 1335.11.  Specifically, the statute defines "commission" as "compensation accruing to a person for payment by another person, the rate of which is expressed *as a percentage* of the dollar amount of orders, sales, or profits."  Ohio Rev. Code § 1335.11(A)(1) (emphasis added).  However, the Commission Policy in this case provides for **a fixed $6,250 payment** "when the combined Sales Gross Profit of the Sales person's territory increases $68,750 over the base value from Sales Gross Profit."  (Doc. 1-2 at 2).  It is unclear whether the $6,250 payment reflects a percentage of profits through some computation.  But, as the parties have not briefed this issue, and in light of the Court's ultimate ruling, the Court will assume without deciding that the Commission Policy meets the statutory definition.

10

couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (quoting *Papasan*, 478 U.S. at 286).  Because Plaintiff's Complaint fails to set forth any allegations to support a finding that Ohio Rev. Code § 1335.11 is applicable to him, dismissal of the claim is appropriate under Rule 12(b)(6).

That said, the Court must next consider Plaintiff's request for leave to amend. "The court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend may, however, be denied "where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, *etc.*'"  *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, as this Court has already stated, the Employment Agreement, Offer Letter, and Commission Policy all appear to describe an employee/employer relationship which, in turn, suggest that amendment would be futile.  However, the determination of Plaintiff's employment status is a fact-intensive analysis.  And, as it appears, to some extent, that the parties were acting outside the bounds of the Employment Agreement (at least with regard to payment of commission).  Therefore, at this time, the Court is not prepared to conclude that amendment would be futile, based solely on the terms of the written agreements.  Because granting leave to amend the Complaint could allow Plaintiff to plead a sufficiently plausible claim, such leave should freely be given.

In sum, Plaintiff's Ohio Rev. Code § 1335.11 claim is dismissed, but Plaintiff is granted leave to amend the Complaint if he so chooses.

### C.  Prompt Pay Act – Ohio Rev. Code § 4113.15

Pursuant to the Ohio Prompt Pay Act ("OPPA"), "[e]very employer doing business in [Ohio]" is required to "pay all its employees the wages earned by them," on at least a semimonthly basis (*i.e.*, twice per month), with allowances for alternative pay periods by written contract or operation of law.  Ohio Rev. Code § 4113.15(A).  The OPPA defines "wage" as "the net amount of money payable to an employee, including any guaranteed pay or reimbursement for expenses, less any federal, state, or local taxes withheld [and/or any other authorized deductions (*e.g.*, health insurance, retirement, *etc.*)]."  Ohio Rev. Code § 4113.15(D)(1).  In the event that wages remain unpaid beyond the timeframe allotted in the statute, and where "**no contest[,] court order or dispute of any wage claim** including the assertion of a counterclaim exists accounting for nonpayment, the employer," the employer is also liable for liquidated damages.  Ohio Rev. Code § 4113.15(B).

Defendant argues that "[t]he only wages Plaintiff alleges are unpaid are the 'additional commissions,'" and, therefore, the claim fails because Plaintiff is not entitled to any further commission.  (Doc. 6 at 10-11).  Defendant further argues that commission payments do not meet the definition of "wages" under the OPPA.  (Doc. 8 at 7).[3]

To start, "the definition of the word wage as used in Section 4113.15 does not include commissions, which are not guaranteed pay or reimbursement for expenses."

---

[3] Defendant also correctly notes that a Prompt Pay Act claim pertains to wages owed to an "employee," whereas qualifying as an employee would preclude Plaintiff's O.R.C. § 1335.11 claim.  (Doc. 8 at 7).

*Baum v. Intertek Testing Servs.*, No. 1:13CV1347, 2013 WL 6492372, at *4 (N.D. Ohio Dec. 10, 2013) (quoting *Haines & Co. v. Stewart*, 2001 WL 166465, at *3 (Ohio Ct. App. Feb. 5, 2001)).  Because Plaintiff's claim is based solely on the alleged nonpayment of commission, the OPPA does not apply.  However, even if Plaintiff's commission constituted "wages," the OPPA still would not apply.

Specifically, "a dispute accounting for nonpayment precludes the award of liquidated damages to a wage claimant" under the OPPA.  *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 577 (6th Cir. 2009).  Additionally, "the majority of courts have found that an OPPA claim is **completely** unavailable where a dispute exists." *Morse v. Fifty W. Brewing Co. LLC*, No. 1:21-CV-377, 2026 WL 872495, at *17 (S.D. Ohio Mar. 30, 2026) (collecting cases) (emphasis added); *see also Bowman v. MetroHealth Sys.*, No. 1:25-CV-00256, 2025 WL 3267906, at *9 (N.D. Ohio Nov. 24, 2025) ("§ 4113.15(A) requires prompt payment, and § 4113.15(B) provides the penalty for the failure to do so. … [The] OPPA does not present separate causes of action in Paragraph A versus Paragraph B") (citing *Garner v. Cleveland Clinic Found.*, 735 F. Supp. 3d 867, 880 (N.D. Ohio 2024)).

Here, Defendant, in no uncertain terms, disputes Plaintiff's entitlement to any further commission or pay.  Because the alleged pay is in dispute, Plaintiff's OPPA claim is precluded.

### D. Unjust Enrichment

In Ohio, to prevail on an unjust enrichment claim, a plaintiff must show that: "'(1) a benefit was conferred by the plaintiff on the defendant, (2) the defendant had

13

knowledge of the benefit, and (3) the defendant retained the benefit under circumstances in which it was unjust to do so without payment.'" *Cleveland Bakers & Teamsters Health & Welfare Fund v. Publicis Health, LLC*, 768 F. Supp. 3d 898, 910 (N.D. Ohio 2025) (quoting *Bunta v. Superior VacuPress, L.L.C.*, 171 Ohio St. 3d 464, 474 (2022)).

"Unjust enrichment occurs when a person 'has and retains money or benefits which in justice and equity belong to another.'" *Morse*, No. 1:21-CV-377, 2026 WL 872495, at *18 (quoting *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005)). Generally, however, "Ohio law does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject matter." *Kettering Adventist Healthcare v. Jade Designs, LLC*, 677 F. Supp. 3d 735, 752 (S.D. Ohio 2023) (quoting *Bunta*, 171 Ohio St. 3d at 474).

Defendant argues that the existence of an express contract, *i.e.*, the Employment Agreement, precludes Plaintiff's unjust enrichment claim. (Doc. 6 at 11-12). Plaintiff acknowledges that "the existence of a contract is fatal to an unjust enrichment claim," but argues that he "has pleaded unjust enrichment in the alternative to his breach of contract claim" because Defendant may still challenge the validity of the Offer Letter and Commission Policy. (Doc. 7 at 13-14).

As this Court has stated, *supra*, the parties appear to have been operating outside the bounds of the Employment Agreement, and it is unclear whether the parties relied upon the Offer Letter, Commission Policy, or some other express or implied contract to effectively fill-in the gaps. Given this uncertainty, and as Plaintiff readily acknowledges

that unjust enrichment is merely an alternative to breach of contract claim, the Court declines to dismiss the unjust enrichment claim at this time.

### E. Statute of Limitations

Finally, Defendant asks that the Court limit recovery under the applicable statute of limitations for any claim not dismissed in this Order.  (Doc. 6 at 13-14).

Under Ohio law, "an action upon a specialty or an agreement, contract, or promise in writing shall be brought within six years after the cause of action accrued."  Ohio Rev. Code. § 2305.06;[4] *see Ownerland Realty, Inc. v. Conversion Props. LLC*, 2022-Ohio-4032, 2022 WL 16909453 (holding § 2305.06 applies to claim for unpaid commission arising from a written contract).  Conversely, "an action upon a contract not in writing, express or implied, shall be brought within four years after the cause of action accrued."  Ohio Rev. Code § 2305.07(A);[5] *see Jenkins v. Garu*, No. 1:25-CV-449, 2026 WL 878935, at *6 (S.D. Ohio Mar. 31, 2026) (finding § 2305.07's four-year statute of limitations applies for breach of oral contract to pay for services rendered).

Given the open question as to the true form of the parties' agreement, the Court finds that such a determination is premature at this stage.

---

[4] In June 2021, Ohio Rev. Code § 2305.06 was amended, reducing the statute of limitations period from eight to six years.  However, the amendment has no meaningful affect here because Plaintiff was hired in September 2018 and, thus, any potential unpaid commission payments necessarily had to have occurred within six years of his February 2024 filing date.

[5] Ohio Rev. Code § 2305.07 was also amended in June 2021, reducing the limitation period from six to four years.  Thus, while a four year statute of limitations would preclude claims accruing prior to February 2020, the application of the six year statute of limitations in effect at the time would render them timely.

## IV.  CONCLUSION

Based upon the foregoing, Defendant's Rule 12(b)(6) motion to dismiss (Doc. 6)

is **GRANTED in part and DENIED in part**.  Specifically, the Court **ORDERS** that:

(1)  Plaintiff's Ohio Prompt Payment claim (Count II) and Ohio Rev. Code § 1335.11 claim (Count IV) are **DISMISSED**;

(2)  Defendant's motion to dismiss is **DENIED** as to Plaintiff's breach of contract claim (Count I) and unjust enrichment claim (Count III), and those claims shall remain pending;

(3)  The Court **GRANTS** Plaintiff leave to file an amended complaint in order to cure the deficiencies as to the Ohio Rev. Code § 1335.11 claim, in line with this Order. Any such amended complaint shall be filed no later than 30 days from entry of this Order; and

(4)  If no amended complaint is filed in 30 days, Defendant shall file an answer within 14 days of the expiration of that deadline.  If an amended complaint is filed, Defendant shall proceed to answer and/or move to dismiss the Ohio Rev. Code § 1335.11 claim, in line with this Order, in accordance with Fed. R. Civ. P. 12.

**IT IS SO ORDERED.**

Date:    6/30/2026

*s/Timothy S. Black*
Timothy S. Black
United States District Judge